IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON POUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 C 6838 |
| vs. | ) | |
| | ) | District Judge |
| | ) | Wayne Andersen |
| NORMAN MINETA, SECRETARY | ) | |
| OF THE DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the court on defendant Department of Transportation's motion for summary judgment [74]. Plaintiff Sharon Pough was employed at the the Federal Aviation Administration ("FAA") and filed a complaint against the Department of Transportation alleging race discrimination, retaliation, and a hostile work environment. For the reasons set forth below, defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff Sharon Pough, a former management employee of the FAA, bases her claims in the present litigation on two EEO administrative complaints filed against the FAA in March 2002 and May 2003. (Local Rule 56.1(a) Statement of Facts "SOF" ¶ 1.) The events on which Pough base the current litigation began in 1999 while she was under the supervision of Joseph Yokley. In 1999, Pough chose to support fellow African-American co-worker, Barbara Thomas-Bagrowski by providing testimony with regard to her complaint of race discrimination. (Response to Local Rule 56.1 Statement of Facts "Resp. to SOF" ¶ 47-48.) Following Pough's

testimony, Yokely became aware of her participation and questioned her reasons for supporting Thomas-Bagrowski. (*Id.* ¶ 48.)

In July 2000, Yokley provided cash awards in recognition of various employee accomplishments within the FAA's human resources department. At a meeting called to discuss the awards, Pough discovered that she was being awarded $150 less than two of her white co-workers. (*Id.* ¶ 53.) While Pough contested the amount she was awarded, she did not file a complaint with an EEO counselor until September 24, 2001, more than a year after the money was awarded and Yokley had retired. (SOF ¶ 26.) Pough claims her award was reduced because of her support in Thomas-Bagrowski's EEO complaint process (*Id.* ¶ 25.)

In February 2001, Yokley retired as supervisor and was replaced by Karen Johnson. (*Id.* ¶ 5.) Shortly after Johnson began as supervisor, she became aware that Pough had "testified previously in some complaint process." (Resp. to SOF ¶ 62.) As part of her management style, Johnson began holding "all hands" meetings aimed at improving departmental communication. (SOF ¶7.) These meetings soon became a vehicle for public acknowledgment of those employees within the human resources division who had received compliments from customers. (*Id.* ¶ 8.) Pough alleges Johnson treated her differently from other team members, refusing to acknowledge publicly her achievements as she did for white employees. (Resp. to SOF ¶ 65.)

Pough points to two incidents in making this claim. In 2001, the human resources division's training team, of which Pough was a part, was nominated for the 2001 Employee of the Year award. In recognition of this accomplishment, every team member was awarded a wooden plaque. (SOF ¶ 9.) Pough claims she received the plaque in Johnson's office, thus being denied the public recognition enjoyed by the other team members. (*Id.* ¶ 11.) Pough also points

2

to an incident involving an FAA official memo, accompanied by a water bottle, given to each employee as a thank you for serving on an interview panel. (*Id.* ¶ 13.) Pough alleges Johnson again denied her public recognition, having her secretary award Pough both the memo and the water bottle outside of an "all hands" meeting (*Id.* ¶ 14.)

Pough also bases her claim on an allegation that in September 2001, Johnson did not award her a sufficient discretionary cash award. (*Id.* ¶ 18.) These awards, given to several managers within the human resources department, were based on contributions made to the department. (*Id.* ¶¶ 18-21.) Pough received a discretionary cash award of $900, and the cash awards received by her co-workers totaled $2300, $1150 and $650. Thus, the discretionary bonus received by Pough was less than that received by two of her white co-workers, yet more than a third co-worker. (*Id.* ¶ 24.)

In March 2002, Pough filed an EEO complaint alleging these incidents were proof of race discrimination stemming from her 1999 support of Thomas-Bagrowski. (*Id.* ¶ 2.) In addition, Pough alleged that she faced a hostile work environment by being "left out of the loop" on decisions her supervisor made within the department. (*Id.* ¶ 2.) Pough alleges she was left out of meetings with other supervisors, faced an uncomfortable and unsettling atmosphere at the meetings she did attend, and was met with deep sighs when she chose to participate. (Res. to SOF ¶ 75-81.)

Pough filed her second EEO complaint in May 2003 alleging retaliation by Johnson in response to filing her March 2002 EEO complaint. The basis of the retaliation claim is a 2003 performance evaluation in which Pough alleges Johnson made derogatory comments. (SOF ¶¶ 3, 36.) However, Pough admits that her performance evaluation included both "positive comments

3

and corrective criticism." (*Id.* ¶ 38.) Pough's retaliation claim also is based on her 2003 pay raise, which was recommended by Johnson, at the "organizational success increase" ("OSI") level rather than at the "superior ccontribution increase" ("SCI") level which Pough felt she deserved. (*Id.* ¶ 37.)

Defendant Department of Transportation now seeks summary judgment on all three of Pough's claims.

### **DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 56, an entry of summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(C)*; Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). In making this determination, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). One may find that there exists a genuine issue of material fact only if a "fair minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

In evaluating whether there exists a genuine issue of material fact, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Id.* at 255. To defeat a party's motion for summary judgment, it is not enough for the non-moving party to show that there exists "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586

(1986). Instead, the non-moving party must present "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(E).

**I. Race Discrimination Claim**

In her current action, Pough claims Johnson discriminated against her in violation of Title VII by denying her the public recognition afforded white co-workers and presenting her with a smaller cash award than her white peers. To prove race discrimination, a plaintiff must establish a *prima facie* case by demonstrating that (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action while (4) similarly situated employees outside of her protected group did not. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, if the defendant rebuts the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for the actions in question, the burden shifts back to the plaintiff, who must then demonstrate that the defendant's reasons were pretextual. *Crim v. Bd. of Educ. of Cairo School Dist. No. 1*, 147 F.3d 535, 540-41 (7th Cir. 1998). In determining whether an employer's stated reasons are pretext, the court's inquiry must focus on whether the reasons are "honest, not whether [they are] accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).

The Department of Transportation seeks summary judgment on the grounds that Pough cannot establish a *prima facie* case of racial discrimination. Further, the Department of Transportation argues that, even if she can establish a *prima facie* case of discrimination, she has not refuted the legitimate, non-discriminatory reasons put forth by the FAA. With regard to establishing that a plaintiff has suffered an adverse employment action, precedent in this Circuit has established that "not everything that makes an employee unhappy is an actionable adverse

action." *Smart v. Ball State Univ.,* 89 F.3d 437,441 (7th Cir. 1996). Those employment actions which are personally humiliating and may result in a "bruised ego" do not necessarily constitute adverse employment actions under Title VII. *See Flaherty v. Gas Research Institute,* 31 F.3d 451 (7th Cir.1994); *Spring v. Sheboygan Area School District,* 865 F.2d 883, 885-86 (7th Cir. 1989).

In this case, Pough's claim that Johnson failed to afford her public recognition does not constitute an adverse employment action for the purpose of satisfying the second element. The fact that Johnson and Pough do not agree on the exact manner in which the awards were presented is wholly irrelevant in this case. Assuming Pough's accusation as true, Johnson's actions do not qualify as adverse employment actions as defined by the Seventh Circuit. Johnson's failure to recognize publically Pough's accomplishments represent the type of ego bruising actions which alone cannot constitute an adverse employment action. Further, Pough has failed to offer this court any evidence beyond Johnson's failure to recognize her publically to support her claim. As the Seventh Circuit has stressed, the court is not to function as a "super-personnel department intervening whenever an employee feels he is being treated unjustly." *Cardoso v. Robert Bosch Corp.,* 427 F.3d 429,435 (7th Cir. 2005).

With regard to Pough's claim that Johnson gave her a smaller cash award than some of her colleagues, this too does not constitute an adverse employment action in this Circuit. In *Hottenrath v. Village of Slinger*, the Seventh Circuit held that an employer's decision to deny an employee an entirely discretionary, merit-based recommendation does not constitute an adverse employment action. 388 F.3d 1015, 1030 (7th Cir. 2004). Based on this precedent, it is clear that Pough fails to establish that she suffered an adverse employment action.

Pough's allegations also fall short with respect to showing that similarly situated employees outside of her protected group did not suffer adverse employment actions. In September 2001, Johnson gave awards in four categories. Pough received awards in two of these categories and was awarded the same amount as her co-workers. The final two categories acknowledged the specific achievements of two team members recognizing one's "leadership in labor relations" and another's "leadership of the HR Services sub team." (SOF ¶ 18-22.) Pough fails to provide evidence showing that she contributed in either of these areas or that she contributed in these areas in a manner comparable to her co-workers.

Further, the FAA put forth legitimate, non-discriminatory reasons for Johnson's award decisions. Johnson has justified her decisions by noting that she did not want the awards to emphasize activities outside of the human resources department. With specific reference to the awards given to Pough, Johnson has stated that she felt the justification Pough submitted to receive an award did not focus on national human resources workgroups or specific accomplishments related to the human resources division's work. (*Id.* ¶ 23.) Pough fails to meet her burden, as she offers no evidence to prove that Johnson's reasons are pretextual. She goes no further than merely noting the difference between the cash amounts she received and that received by her co-workers. Without any evidence that Johnson's reasons are dishonest, Pough cannot succeed on this point.

Finally, Pough attempts to reference cash awards given by her former supervisor Joseph Yokley to demonstrate that she was subject to adverse employment actions. However, Pough's reference to cash awards given by Yokely is of no relevance in the present case. According to 29 C.F.R. § 1614.105 (a)(1), one who believes they have been discriminated against has 45 days

to file a complaint with an EEO counselor. Having failed to file any complaint regarding this claim, Pough is now barred from bringing this claim in the present litigation. Further, Pough's claims in this case are based on allegations made against her most recent supervisor, Karen Johnson, making incidents involving Yokley factually irrelevant.

Because Pough's allegations cannot be categorized as adverse employment actions and because she cannot establish that similarly situated employees were not subjected to the same treatment, Pough cannot establish a *prima facie* case of racial discrimination. For these reasons, the Department of Transportation is entitled to summary judgment.

## II. Retaliation Claim

Pough also alleges retaliation by Johnson in response to her March 2002 EEO complaint. In the absence of direct evidence against an employer, a plaintiff must establish a *prima facie* case of retaliation. In order to succeed on a retaliation claim, a plaintiff must present sufficient evidence that: 1) she opposed an unlawful employment practice; 2) she suffered an adverse employment action; and 3) the adverse employment action was caused by her opposition to the unlawful employment practice. *David v. Caterpillar, Inc.,* 324 F.3d 851, 858 (7th Cir. 2003).

Pough's allegation of retaliation is based on Johnson's comments on her 2002 evaluation and her decision to award Pough a raise at the "OSI" rather than the "SCI" level. As for Johnson's comments on Pough's 2002 performace evaluation, Pough admits that her evaluation was not wholly negative, as Johnson included both "positive comments and corrective criticism." (*Id.* ¶ 38.) The Seventh Circuit does not recognize written or oral reprimands of this type as adverse employment actions. In *Oest v. Ill. Dept. of Corrections*, the Seventh Circuit held that oral or written reprimands, although they may ultimately bring an employee closer to

8

termination, do not constitute adverse actions for the purpose of Title VII. 240 F.3d 605, 613 (7th Cir. 2001).

With regard to her pay raise, the level at which Pough was awarded a raise was determined only in part by Johnson's evaluation. While the FAA panel charged with approving pay raises admits that a great deal of deference is given to a supervisor's recommendation, and in considering both Johnson's evaluation and Pough's self assessment, the panel did not find her achievements were significant enough to justify the higher pay raise. (Resp. to SOF ¶¶ 67-8; SOF ¶ 40.) While Pough may have received a lesser pay raise than she felt she deserved, Johnson's evaluation in no way had the type of effect the court noted it was looking for in *Oest*. As a result, Johnson's 2002 evaluation of Pough did not constitute an adverse employment action for the purposes of Title VII. Pough, therefore, cannot establish a *prima facie* case of retaliation entitling the Department of Transportation to summary judgment.

### III. Hostile Work Environment Claim

Finally, Pough alleges that she was subjected to a hostile work environment based on her race and her participation in Thomas-Bagrowski's EEO complaint process. To succeed on a claim of hostile work environment, a plaintiff must show that her work environment was so severe that it altered the conditions of her employment. *Silk v. City of Chicago,* 194 F.3d 788, 804 (7th Cir. 1999). In evaluating a plaintiff's evidence, the court must consider "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (*quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993)). The

9

Department of Transportation seeks summary judgment on the ground that Pough's claims do not adequately meet the requirements of this Circuit.

In asserting her claim, Pough points to several things she feels are evidence of a hostile work environment. Pough alleges that during management meetings there was obvious tension, and on several occasions, Johnson seemed not to acknowledge her and failed to make eye contact. (Resp. to SOF ¶¶ 73-4.) She also alleges that on several occasions she was excluded from meetings and, when she did participate, her comments often were met with eye rolling and heavy sighs from other supervisors. (*Id.* ¶¶ 75-9.) Additionally, Pough noted that the atmosphere at meetings was often very uncomfortable and unsettling. (*Id.* ¶ 81.)

Assuming that Pough experienced the behavior outlined above, these details fail to establish that she was the victim of a hostile work environment. While Pough offers examples of the rude and quite possibly childish behavior of her peers, it cannot be said that any of these actions altered the conditions of her employment nor can it be said that they unreasonably interfered with her work performance. Despite the treatment which she claims is evidence of a hostile work environment, Pough maintained her status as a manager and excelled in her position. While Pough allegedly was being subjected to a hostile work environment she was awarded both a discretionary cash bonus and a pay raise higher than that received by one of her co-workers. Pough, therefore, cannot meet her burden to successfully maintain a claim of hostile work environment, and defendant Department of Transportation is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant Department of Transportation's motion for summary judgment [73] is granted, terminating this case. This is a final and appealable order. It is so ordered.

                                                    */s/ Wayne Andersen*
                                                  Wayne R. Andersen
                                                 United States District Judge

Dated: September 19, 2008